IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Case No. 11-cr-00018-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHARLES A. BALDWIN,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on the Notice of Appeal [Docket No. 2] filed by defendant Charles A. Baldwin. Defendant appeals his conviction of three petty offenses after a bench trial to the magistrate judge in Criminal Case No. 10-po-01136-KMT. The Court exercises jurisdiction over this appeal pursuant to 18 U.S.C. § 3402 and Fed. R. Crim P. 58(g)(2)(D). Neither party requested oral argument.

**I. BACKGROUND**[1]

This case arises out of a traffic stop of defendant by Kevin Lundy, an area commander with the Federal Protective Service, shortly before 5:00 p.m. on April 5, 2010. The stop, which defendant stipulated was lawful, *see* Docket No. 10 at 16, ll. 20-21, occurred on the property of the Denver Federal Center ("DFC"). Commander Lundy pulled over defendant, who works at the DFC, as he was driving home from work in a

---

[1]The following facts are drawn from "the record viewed in the light most favorable to the government." *United States v. Matousek*, 131 F. App'x 641, 644 (10th Cir. 2005) (citing *United States v. Lewis*, 240 F.3d 866, 870 (10th Cir. 2001)).

pickup truck.  Commander Lundy intended to warn defendant about driving too fast in light of the many bicyclists who also use the same roadway.  As Commander Lundy was explaining the purpose of the stop, defendant cut him off mid-sentence, acknowledging Commander Lundy's concern regarding bicyclists, and then began to drive away.  Commander Lundy ordered defendant to stop three times in a loud voice from about six to eight feet away.  Defendant did not stop his vehicle and drove off of the DFC property.

Commander Lundy returned to his vehicle and, with his emergency lights and siren activated, pursued defendant.  He pulled defendant over again, this time outside the DFC property.  Upon reaching the driver's side window of defendant's vehicle, Commander Lundy testified that he requested several times that defendant provide his license, registration, and proof of insurance, but defendant did not provide them.  Commander Lundy informed defendant that, if he failed to supply the requested documentation, defendant would be placed under arrest.  Despite an additional order to supply these documents, defendant failed to do so.

Commander Lundy informed defendant that he was under arrest and, in order to effectuate the arrest, opened the driver's side door and ordered defendant to get out of his truck.[2]  Defendant did not comply.  Commander Lundy then placed defendant in a wrist lock and again ordered him to get out of the vehicle.  Defendant remained noncompliant.  Commander Lundy ultimately had to undo defendant's seatbelt and pull him from the pickup truck.  Commander Lundy ordered defendant to stop resisting, but

---

[2]Defendant testified that Commander Lundy was yelling, but defendant was unable to remember what Commander Lundy said to him.

defendant failed to comply.  Once defendant was out of the vehicle, defendant placed his arms over the bed of the pickup truck and resisted Commander Lundy's efforts to place him in handcuffs.  Despite defendant's resistance, Commander Lundy managed to handcuff him.

On September 1, 2010, defendant was charged by information with (1) failure to comply with a lawful order in violation of 41 C.F.R. § 102-74.385, (2) disorderly conduct impeding or disrupting performance of official duties in violation of 41 C.F.R. § 102-74.390, and (3) attempting to obstruct a peace officer in violation of 18 U.S.C. § 13 and Colo. Rev. Stat. § 18-8-104 and § 18-2-101.

The assigned magistrate judge presided over a bench trial on November 22, 2010.  See Docket No. 41 in Case No. 10-po-01136-KMT.  She convicted defendant of all three counts.  On January 18, 2011, the magistrate judge held a sentencing hearing.  She imposed a $2,500.00 fine and $5.00 assessment on count one, a $1,000.00 fine and $5.00 assessment on count two, and a $750.00 fine and $10.00 assessment on count three.  See Docket No. 48 in Case No. 10-po-01136-KMT.  Judgment entered that day.  See Docket Nos. 47, 48 in Case No. 10-po-01136-KMT.  The present appeal followed.  See Docket No. 2.

## II.  STANDARD OF REVIEW

In an appeal from a petty offense conviction by a magistrate judge, the "scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).  Plaintiff's statutory interpretation arguments raise legal questions which the Court subjects to de novo review.  See *United States v. Nacchio*, 573 F.3d 1062, 1087 (10th Cir. 2009) ("We review questions

3

of statutory interpretation de novo.") (citing *United States v. Willis*, 476 F.3d 1121, 1124 (10th Cir. 2007)). Plaintiff also challenges the sufficiency of the evidence supporting his convictions. "Sufficiency of the evidence is a legal issue . . . review[ed] de novo." *United States v. Green*, 435 F.3d 1265, 1272 (10th Cir. 2006). When engaging in that review, the Court, "[b]ased on the record viewed in the light most favorable to the government, . . . must determine whether a reasonable factfinder could find the defendant guilty beyond a reasonable doubt." *United States v. Matousek*, 131 F. App'x 641, 644 (10th Cir. 2005) (citing *United States v. Lewis*, 240 F.3d 866, 870 (10th Cir. 2001)); *see United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999). Because the defendant is pro se, the Court will construe his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. DISCUSSION

### A. Counts One and Two

Defendant argues that 41 C.F.R. § 102-74.385 and 41 C.F.R. § 102-74.390 do not constitute federal crimes, but rather are merely statements of General Services Administration ("GSA") policy.[3] While the provisions (as well as their titles[4]) reflect

---

[3] 41 C.F.R. § 102-74.385 provides as follows: "Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals."

41 C.F.R. § 102-74.390 provides as follows:
> All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that –
> (a) Creates loud or unusual noise or a nuisance;
> (b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;
> (c) Otherwise impedes or disrupts the performance of official duties by Government employees; or

4

relevant "policies" for conduct on federal property, they also constitute rules clearly proscribing certain acts by individuals, the violation of which may lead to criminal penalties. *See* 41 C.F.R. § 102-74.450 ("A person found guilty of violating any rule or regulation in this subpart while on any property under the charge and control of GSA shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both."); *see also* 40 U.S.C. § 1315(c) ("(1) . . . The Secretary [of Homeland Security], in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in paragraph (2), for violations of the regulations. The regulations shall be posted and remain posted in a conspicuous place on the property. (2) . . . A person violating a regulation prescribed under this subsection shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both."); *cf. United States v. Penk*, 319 F. App'x 733, 734 (10th Cir. 2009) (noting that defendant was sentenced pursuant to 41 C.F.R. § 102-74.450 for violating 41 C.F.R. § 102-74.385, a Class C misdemeanor). Thus, defendant's arguments that Counts One and Two do not charge actual crimes is incorrect.

---

(d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

[4]*See* 41 C.F.R. § 102-74.385 ("What is the policy concerning conformity with official signs and directions?"); 41 C.F.R. § 41 C.F.R. § 102-74.390 ("What is the policy concerning disturbances?").

Defendant also contends that 41 C.F.R. § 102-74.390 is void for vagueness.[5] "The prohibitions of a criminal statute must be 'set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest,' and be written in a manner that does not encourage arbitrary and discriminatory enforcement." *Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005). In this case, defendant was charged with "exhibiting disorderly conduct . . . that . . . impedes or disrupts the performance of official duties by Government employees." 41 C.F.R. § 102-74.390(c). He does not explain, nor can the Court discern, how this aspect of the regulation is impermissibly vague. Where, as here, "the enactment implicates no constitutionally protected conduct," a court "should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982); *see United States v. Starr*, 173 F.3d 865 (table op.), 1999 WL 178549, at *1 (10th Cir. April 1, 1999) ("Where a vagueness challenge does not implicate the First Amendment, we review the statutory challenge only with respect to the particular conduct charged."). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates*, 455 U.S. at 495. Moreover, the Court finds no basis to conclude that any subsection is "written in

---

[5]Defendant contends that his argument applies equally to Count One of the information, but offers no explanation how such is the case. The Court finds no basis to invalidate § 102-74.385 on vagueness grounds.

a manner that . . . encourage[s] arbitrary and discriminatory enforcement." *Ward*, 398 F.3d at 1251.[6]

Defendant argues that the lack of a *mens rea* requirement in the regulatory provisions indicates that they were not intended to be enforced criminally. *See* Docket No. 11 at 18. The Court disagrees. The United States Attorney's Office charged that defendant *knowingly* violated the regulations, Docket No. 14, and that was the *mens rea* which the magistrate judge applied in finding the defendant guilty. Docket No. 10 at 246. The lack of specificity as to *mens rea* in the provisions does not suggest that violation of them is not subject to criminal penalties. *See Staples v. United States*, 511 U.S. 600, 605-06 (1994) ("[W]e have noted that the common-law rule requiring *mens rea* has been 'followed in regard to statutory crimes even where the statutory definition did not in terms include it.'") (citation omitted).

Defendant also argues that, even assuming a *mens rea* requirement exists, there was insufficient evidence that he acted knowingly. Defendant contends that he can only be convicted for knowingly impeding official duties while on federal property. *See* Docket No. 11 at 22. The record, however, contains sufficient evidence supporting the magistrate judge's conclusion that defendant's actions constituted a "single continuing course of criminal conduct that began on" federal property. *See* Docket No. 10 at 241,

---

[6]"If a defendant believes he was not impeding the official duties of a government employee, he can raise as a defense that his conduct did not impede or disrupt." *United States v. Brice*, 926 F.2d 925, 930 (9th Cir. 1991) (addressing 41 C.F.R. § 101-20.305 (1988)). The *Brice* court noted that, when such a defense is raised, the "court rather than the government employee will determine whether an official duty has been impeded," and that "[r]aising such a defense is exactly what [defendant] did in his . . . argument that the evidence presented at trial was insufficient to support his conviction." 926 F.2d at 930 & n.7.

ll. 23-24. Commander Lundy's official duties included the authority to "enforce Federal laws and regulations for the protection of persons and property; . . . make arrests without a warrant for any offense against the United States committed in the presence of the officer or agent; . . . [and] conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Federal Government or persons on the property." 40 U.S.C. § 1315(b)(2). Defendant cites no support for the proposition that Commander Lundy was not permitted to pursue him for violations occurring on federal property or for the assertion that his conduct outside of the DFC did not constitute impeding Commander Lundy's official duties. *See United States v. Evans*, 2007 WL 4456327, at *3 (E.D. Mich. Dec. 14, 2007) ("This case should therefore be distinguished from a situation in which a law enforcement officer takes action based on his observations of conduct wholly outside of and unconnected with his jurisdiction."); *cf. United States v. Simon*, 368 F. Supp. 2d 73, 76 (D.D.C. 2005) ("A Metro Transit Police official cannot patrol the streets of D.C. making traffic stops and/or arrests *unless* the offenses in question originated on or against [Washington Metropolitan Area Transit Authority] facilities.") (citation omitted) (emphasis in original).

Defendant contends that, due to a hearing impairment, he could not hear the commands of the officer to stop while still on federal property and that "[a]t no time . . . [did he] fail to comply with [the officer's] directions as [he[ could understand them at the time." Docket No. 10 at 193-194. The magistrate judge, however, after listening to his testimony and observing his demeanor, did not find defendant credible, *see* Docket No.

8

10 at 239-43, and the Court identifies no basis to overturn that conclusion.[7] *See United States v. Shelton*, 2007 WL 328812, at *4 (N.D. Ill. Jan. 31, 2007) (addressing defendant's allegation in a case arising out of § 102-74.385 that "the trial court 'ignored' [her] testimony that she had difficulty hearing or understanding the officers' orders for [her] to leave the building" and noting that the "transcript makes amply clear . . . that [the magistrate judge] considered [defendant's] full testimony . . . and appropriately made a credibility decision after [defendant] had the opportunity to testify in narrative form on her own behalf") (citation omitted).[8]

---

[7] *See*, e.g. Docket No. 10 at 31, ll. 4-9 (Q: "[B]ased on your observations of the defendant at the time that you contacted him, did he appear to have any trouble hearing you while you used this relaxed tone of voice? A[:] No, sir. In fact, he responded to me acknowledging the fact that there were bicycles in the roadway."); Docket No. 10 at 198, ll. 9-11 (Q: "You were able to hear [the officer] when he said whatever it was he said to you at that time? Defendant: Correct."); *see also* Docket No. 10 at 45, ll. 15-23; *cf.* Docket No. 10 at 193, ll. 5-8.

[8] Defendant contends that the "record in this case is void of any evidence that DHS complied with the requirement GSA established at 41 CFR 102-74.365 (2009) (Attachment P) that '[f]ederal agencies must post the notice in the Appendix to this part at each public entrance to each Federal facility.'" Docket No. 11 at 21. Defendant argues that "the Fifth Circuit has held [in *United States v. Strakoff*, 719 F.2d 1307 (5th Cir. 1983)] that the failure to provide the mandated warning required the reversal of any conviction." Docket No. 11 at 21. However, "[i]n *Strakoff*, the Fifth Circuit suggested that actual notice is sufficient," and the "court held that because notice was not posted in a conspicuous place, and 'absent any showing that Strakoff did *in fact* have notice of the proscriptions of [a regulation], [the] conviction [could not] stand.'" *United States v. Bichsel*, 395 F.3d 1053, 1057 (9th Cir. 2005) (quoting *Strakoff*, 719 F.2d at 1310 (emphasis added)). Here, the record contains evidence that defendant was aware that his conduct began on federal property, that Commander Lundy was a federal officer, and that he would be subject to arrest if he continued to be noncompliant. *See, e.g.*, Docket No. 10 at 47, ll. 5-6 (where Commander Lundy testified to telling defendant that "failure to [comply] would result in his arrest"). The Court finds that any failure to supply evidence of whether and where the regulations at issue were posted on the property does not require reversal of defendant's conviction. *See Bischel*, 395 F.3d at 1057 (finding that actual notice was sufficient for conviction despite lack of compliance with posting requirement where the defendant "understood that he was in a federal

## B. Count Three

Defendant was convicted of attempting to obstruct a peace officer in violation of 18 U.S.C. § 13, incorporating Colo. Rev. Stat. §§ 18-8-104 and 18-2-101. Colo. Rev. Stat. § 18-8-104(1)(a) provides that a "person commits obstructing a peace officer . . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority." Pursuant to Colo. Rev. Stat. § 18-2-101(1), a "person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense."

Defendant first argues that the government failed to prove that he acted with the required *mens rea*. He avers that "[t]here is no evidence of any intent by the Defendant while on the grounds of the DFC to obstruct an officer." Docket No. 11 at 25. The record contains abundant evidence that defendant was knowingly noncompliant both while on federal property and thereafter during the stop off of the DFC grounds. Moreover, the magistrate judge found that defendant's version of events lacked credibility. And, although defendant asserts that the evidence did not meet the "substantial step" requirement of the Colorado attempt statute, he fails to offer any persuasive reason to overturn his conviction on that charge. *See* Docket No. 10.

---

courthouse, that [the officer] was a police officer with a federal badge and insignia, and that he would be arrested if he did not unchain himself"); *see id*. at 1056 ("This holding is consistent with *United States v. Davis*, 339 F.3d 1223 (10th Cir. 2003), which adopts the actual notice exception.").

Defendant's conduct strongly corroborated his intention to obstruct Commander Lundy's official duties.

Finally, the Court rejects defendant's contention that he established the affirmative defense of abandonment. Pursuant to Colo. Rev. Stat § 18-2-101(3), "[i]t is an affirmative defense to a charge under this section that the defendant abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting the complete and voluntary renunciation of his criminal intent." There is no evidence that defendant ever abandoned his effort to commit the crime. Rather, he abandoned the federal property, which does not free him of responsibility for the attempted obstruction of Commander Lundy's official duties.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's conviction in Criminal Case No. 10-po-01136-KMT is AFFIRMED. It is further

**ORDERED** that this matter is closed.

DATED April 23, 2013.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge